**NORTH AMERICAN SPECIALTY INSURANCE COMPANY, Defendant–Appellant,**

v.

**J.A. JONES ENVIRONMENTAL SERVICES, CO., Plaintiff–Appellee.**

No. 01–1766.

United States Court of Appeals, Sixth Circuit.

April 3, 2003.

Before COLE, GILMAN, and BRIGHT,* Circuit Judges.

PER CURIAM.

In this case a general contractor, J.A. Jones Environmental Services, Co. ("Jones"), brought an action for breach of contract against its subcontractor, Horizontal Technologies, Inc. ("HTI"), and the latter's bonding company, North American Specialty Insurance Company ("NAS"), which provided a payment and a performance bond for HTI, protecting Jones from a default by the subcontractor. The jury decided for Jones in a general verdict. NAS appeals, asserting that it was entitled to a judgment as a matter of law inasmuch as Jones presented insufficient evidence to

support a jury verdict on any of Jones's legal theories. We disagree and affirm.

Jones entered into a contract in August 1995 with Ford Motor Land Development Company pursuant to which Jones was to provide construction work at a stamping plant in Monroe. Michigan. Jones was responsible for enclosing the landfill, and HTI was responsible for installing a leachate (contaminated water) collection system that included an underground piping system to transport the leachate to a treatment center. Jones required that HTI provide a performance and a payment bond.

As we have observed, NAS provided a performance and a payment bond for HTI. After installation, Jones determined that portions of the piping system were damaged. Jones paid for the repairs and for work on other portions of the landfill affected by the pipe repairs. When payment was not forthcoming from HTI, Jones sued both HTI and NAS for breach of the subcontract and the performance bond.

At trial, NAS argued that Jones failed to provide it with notice of HTI's default. NAS argued that a May 4, 1998 letter[1] from Jones to HTI was not a proper declaration of default, and that NAS had been deprived of its options under the bond because of the late notice of HTI's default. The jury also heard arguments from Jones that NAS waived its right to claim it received late notice because it did not raise

---

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Jones's project manager, Don Curtis, was not satisfied with portions of HTI's performance. By letter dated May 4, 1998, he informed HTI that it was not in compliance with the subcontract for three specific reasons: (1) unpaid suppliers; (2) unsatisfactory current progress; and (3) failure to provide

adequate supervision. Jones sent a copy of this letter to American Phoenix Corporation, NAS's agent, who then forwarded a copy to NAS. Jones directed HTI to inform it within forty-eight hours of receiving the notice about how HTI intended to remedy its default. On or about May 6, 1998, HTI responded to Jones's letter and addressed each of Curtis's three concerns. Curtis testified that he did not respond to HTI's May 6 letter.

this affirmative defense in a timely manner.[2]

Trial began on March 7, 2001 and concluded on March 15, 2001. The jury was asked to determine whether HTI breached its subcontract with Jones and whether NAS breached its performance bond with Jones. The jury found that there had been a breach of the subcontract and the bond and awarded all of the damages claimed by Jones. Jones stipulated that the maximum judgment, exclusive of interest, against NAS was limited to the penal sum of the bond. The court rejected the motion of NAS for a directed verdict during trial as well as a post-trial motion for judgment of dismissal. NAS appeals the final judgment, asserting lack of evidence to support the verdict of the jury.

We must accord substantial deference to jury verdicts, and we may not "weigh the evidence, pass on the credibility of the witnesses, nor substitute our judgment for that of the jury." *Jewell v. CSX Transp., Inc.*, 135 F.3d 361, 366 (6th Cir.1998) (quoting *Davis v. Mutual Life Ins. Co.*, 6 F.3d 367, 374 (6th Cir.1993)).

In support of its contention that the jury verdict was not supported by substantial evidence, NAS makes several arguments. Most significantly, NAS argues that May 4, 1998 cannot be the date of the default notice because Jones did not discover the damaged pipe until late July 1998. All of the damages claimed by Jones arose out of the damaged pipe and there would be no dispute without it. According to NAS. the three items listed in the May 4 letter (unpaid suppliers, unsatisfactory current progress, and failure to provide adequate supervision) played no role in damaging the pipe.[3]

We are mindful of the fact that NAS made these and other arguments to the jury. NAS did not object to the verdict form, nor did it request specific interrogatories. Therefore, we must assume that the jury's general verdict implicitly rejected NAS's arguments. Furthermore, drawing all reasonable inferences in favor of the jury verdict, there exists sufficient evidence that the jury could have concluded that the notice on May 4, 1998 covered the continuing defaults of the subcontractor.

The evidence permitted the jury to infer a link between the three items listed in the May 4 default letter and the problems with the pipe. For instance, the jury could have concluded that HTI's construction delays led to the pipe's damage.[4] The jury also could have credited Jones's project manager's testimony that HTI never cured the May 4 defaults and Jones considered HTI to be in continuous default. There is also sufficient evidence for the jury to have concluded that by waiting to raise its affirmative defense until January 19, 2001, NAS waived any right to assert the defense. The trial court specifically instructed the jury about NAS's affirmative defense and that this defense could be

---

**2.** NAS first raised its affirmative defense of lack of default notice on January 19, 2001.

**3.** NAS also argues that there was no default on May 4 because after HTI's May 6 letter to Jones, it was "business as usual" between HTI and Jones. HTI proceeded with its work, received a punch list on June 30, 1998, and completed the work by July 1998. Up until August 28, 1998, HTI was still receiving payments from Jones.

**4.** On May 4, 1998, the same day it sent the default letter, Jones directed HTI to test the underground piping system to verify that it had been installed and was functioning properly. HTI did not perform any testing. The damaged pipe was revealed when pipe verification tests were made at a later time.

waived if the jury found that NAS failed to timely raise the defense or object to Jones's declaration of default.

Accordingly, we affirm the judgment of the district court.